UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Thomas Evenstad,

         Plaintiff,

v.

Bryan Herberg, Lyle Johnson, Ryan Chukuske,
Stacy Michels, Shad Coyour,
Robin Oulette, Nancy Johnston,
Gary Grimm, and Lucinda Jesson,

         Defendants.

Civ. No. 12-3179 (RHK/JJG)
**MEMORANDUM OPINION
AND ORDER**

Peter J. Nickitas, Peter J. Nickitas Law Office, LLC, Minneapolis, Minnesota, for Plaintiff.

Ricardo Figueroa, Uzodima Franklin Aba-Onu, Minnesota Attorney General's Office, St. Paul, Minnesota, for Defendants.

## INTRODUCTION

In 2006, Plaintiff Thomas Evenstad was placed in the Minnesota Sex Offender Program ("MSOP") in St. Peter, Minnesota, pending civil commitment proceedings against him. In this action, he alleges that numerous state officials and MSOP employees violated his constitutional and statutory rights while he was in the MSOP by physically assaulting him, seizing his personal effects, denying him medical treatment, and placing him in solitary confinement in retaliation for complaining to the Commissioner of Human Services and MSOP staff about his mistreatment. He asserts seventeen claims against

nine Defendants. Defendants now move to dismiss thirteen of his claims; for the reasons set forth below, their Motion will be granted in part and denied in part.

## BACKGROUND

Evenstad alleges the following facts in his Amended Complaint:

In 1999, Evenstad was convicted of first degree criminal sexual conduct. He served a prison sentence for that conviction from March 1999 through June 2006. On June 8, 2006, he was transferred to the Hennepin County Workhouse for seven days and was then transferred to the MSOP on "judicial hold," pending civil commitment. At no time relevant to the instant action was Evenstad civilly committed to the MSOP, or a "patient," or "person in treatment" as those terms are defined with regard to the MSOP by Minnesota Statutes and Rules.

Evenstad was dissatisfied with the conditions of his confinement in the MSOP and complained many times over the course of his stay to MSOP staff, the Director of the MSOP, and the Commissioner of the Department of Human Services, which Department runs the MSOP. On November 2, 2006, he wrote a letter to the Director of the MSOP requesting a transfer in housing and provided copies of the letter to Defendants Bryan Herberg, Lyle Johnson, and Ryan Chukuske, all of whom were MSOP staff members. (Am. Compl. ¶ 84.)

On December 21, 2006, after Evenstad had been at the MSOP for approximately six months and suffered what he believed to be various violations of the law and of the MSOP's own policies, he wrote a letter to the then Commissioner of the Department of Human Services, Cal Ludeman, stating "he was in fear on account of threats made to

him" by the MSOP's Unit Director, Defendant Johnson. (Am. Compl. ¶ 102.) He prepared this letter on a patient request form and submitted it to "the Team,"[1] which made copies to forward to the Commissioner and others. Evenstad "observed the Team staff members pass his letter . . . around to each of them" and he observed Johnson sign off on it. (Id. ¶¶ 104–05.)

On December 25, Johnson informed Evenstad that they would "be ramping things up" in relation to Evenstad's treatment, which Evenstad interpreted as a threat. (Id. ¶¶ 109, 111.) On December 27, around 9:00 a.m., Defendants Shad Coyour and Stacy Michels, Security Counselors, and Defendant Herberg, the Security Counselor Lead, awakened Evenstad and told him to get dressed and come out of his cell. After he did as they instructed, they informed him his cell was being randomly searched and he would have to submit to a pat-down. (Id. ¶¶ 112–15.) Evenstad alleges that during the "pat-down," Coyour "place[ed] his hands on the inside of Evenstad's pants and reach[ed] down until he felt Evenstad's penis and squeezed [] Evenstad's testicles violently," causing Evenstad to scream out and double over in pain. (Id. ¶¶ 118–19.) When Evenstad objected to Coyour continuing, the three Defendants threatened to put him in isolation. (Id. ¶¶ 119–20.) Coyour then patted down the outside of Evenstad's legs, "placed his hands on the inside of Evenstad's legs around his ankles, and then violently forced his hands up [] Evenstad's legs until they smashed him in his testicles." (Id. ¶ 122.) Once again, Evenstad cried out in pain and they then threatened to put him in

---

[1] Evenstad does not specify who or what composes this "Team"; the Court assumes it to be a segment of the MSOP's staff.

isolation; he complained of pain and requested medical treatment, which was denied. (Id. ¶¶ 124–28.) Evenstad alleges they were laughing throughout the assault. (Id. ¶¶ 121, 126.)

During their search of his cell, Coyour, Michels, and Herberg removed two ten-gallon tote boxes full of his papers and personal effects, including legal materials such as his communications with his civil-commitment attorneys. (Id. ¶¶ 111, 127, 135.) He alleges the three spent the next five hours reading and reviewing his legal materials and when he complained, they threatened him with isolation again and closed his cell door so he could not see them. (Id. ¶¶ 127–30.) He alleges the staff spent the next ten to fifteen hours reading and reviewing all of his legal materials. (Id. ¶ 131.) MSOP ultimately returned one of the boxes to him in late February, but the second was never returned. (Id. ¶¶ 132–33.)

When the "med window" opened that morning shortly after Coyour's assault on him, Evenstad informed the nurse on duty, Defendant Robin Oulette, that he had been injured by staff and was in extreme pain. (Id. ¶ 139.) Oulette told him MSOP staff does not assault patients and she did not believe him, and she did not examine him. (Id. ¶¶ 140–43.) He told Oulette that he wished to make a formal complaint of abuse but she refused and stated she did not take reports of abuse, so he asked her to document that he was assaulted and his testicles were injured. (Id. ¶¶ 143–45.)

Evenstad alleges that shortly after this incident, MSOP began to put him in Protective Isolation ("PI"), which is analogous to solitary confinement. The MSOP represented that he was put in PI as punishment for not following behavioral guidelines—

Evenstad was on Designated Area Restriction ("DAR") status at the time, and his PI was allegedly a punishment for not following those DAR guidelines, but Evenstad alleges such punishment violated MSOP policy. (Id. ¶¶ 82–90, 153–57.) Evenstad was placed in PI at least four times between January 2, 2007, and March 5, 2007. (Id. ¶ 158.) Each time, the punishment was upheld by the "PI Review Panel" comprising three MSOP officials, including Defendant and Program Director Gary Grimm. (Id. ¶¶ 163–68.) Evenstad also alleges on at least one occasion he was put in PI because of false statements regarding his behavior made by Defendant Ryan Chukuske, a Security Counselor and Behavioral Analyst, in retaliation for his letter to Ludeman. (Id. ¶ 227.)

In January and February, the Department of Human Services and the Office of Special Investigations sent investigators to the MSOP in St. Peter, who spoke with Evenstad about his complaints. On March 7, one investigator issued a report finding numerous violations of the Minnesota Rules by Grimm and by the Site Director, Defendant Nancy Johnston.

On March 6, 2007, Evenstad was remanded to the Minnesota Department of Corrections and on August 18, 2008, he was released. In December 2012, he filed the instant action, asserting seventeen claims against the nine Defendants, and later amended his Complaint. Defendants now move to dismiss thirteen of his claims (Counts I–IV, VI-VII, IX–X,[2] XII–XIII, and XVI–XVII). The Motion has been fully briefed and is ripe for disposition.

---

[2] Evenstad's Amended Complaint contains two Counts numbered "X" and no count numbered "XI." Defendants move to dismiss both Counts numbered "X."

## STANDARD OF DECISION

The Supreme Court set forth the standard for evaluating a motion to dismiss in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 547. A "formulaic recitation of the elements of a cause of action" will not suffice. Id. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).

When reviewing a motion to dismiss, the Court "must accept [the] plaintiff's specific factual allegations as true but [need] not . . . accept a plaintiff's legal conclusions." Brown v. Medtronic, Inc., 628 F.3d 451, 459 (8th Cir. 2010) (citing Twombly, 550 U.S. at 556). The complaint must be construed liberally, and any allegations or reasonable inferences arising therefrom must be interpreted in the light most favorable to the plaintiff. Twombly, 550 U.S. at 554–56. A complaint should not be dismissed simply because the Court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. Id. at 556. Accordingly, a well-pleaded complaint will survive a motion to dismiss even if recovery appears remote. Id. "Finally, the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009).

# ANALYSIS[3]

## I.  First Amendment Retaliation

Evenstad alleges numerous retaliation claims against numerous Defendants.  To establish a retaliation claim, a plaintiff must show: (1) he engaged in a protected activity; (2) a government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) the adverse action was motivated at least in part by the protected activity.  Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004).  Failure to satisfy any of the three elements results in the failure of the claim.  Higdon v. Jackson, 393 F.3d 1211, 1219 (8th Cir. 2004).

As to the first element, Evenstad alleges he exercised his rights to free speech and peaceful petition for redress of his grievances, both protected activities, on several occasions.  He alleges he wrote to the former MSOP Director requesting a transfer of housing accommodations in November 2006; he wrote to Commissioner Ludeman about threats from Johnson, an MSOP staff member, in December; several days later, he reported his abuse by Herberg, Coyour, and Michels to Nurse Oulette, all of whom were MSOP staff members; in January and February, he spoke to government investigators about the MSOP's use of PI and the staff's alleged December assault; and, throughout his stay, he collected statements of others who suffered or witnessed abuse at the MSOP and

---

[3] As an initial matter, Defendants assert that any of Evenstad's claims stemming from events that took place before December 21, 2006, are time-barred.  See, e.g., Helleloid v. Ind. Sch. Dist. No. 361, 149 F. Supp. 2d 863, 867 (D. Minn. 2001) (Erickson, M.J.) (six-year statute of limitations applies to § 1983 claims in Minnesota).  As each of his claims stems from Defendants' conduct *on or after* December 21, 2006, this argument is inconsequential.

spoke to his attorneys about his abuse.  The First Amendment protects "a significant amount of verbal criticism and challenge" directed at the government and its officials. City of Houston v. Hill, 482 U.S. 451, 461 (1987).  "While an individual's critical comments may be provocative and challenging, they are nevertheless protected against censorship or punishment, unless shown to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." Ford v. City of Yakima, 706 F.3d 1188, 1192–93 (9th Cir. 2013) (quotations omitted); see also Naucke v. City of Park Hills, 284 F.3d 923, 927–28 (8th Cir. 2002) ("[C]riticism of government officials lies at the very core of speech protected by the First Amendment.").  As civilly committed persons retain their First Amendment rights to exercise the freedom of speech and to seek redress of grievances, Revels, 382 F.3d at 876, each of these communications constitutes a protected activity.

As to the second element, Evenstad alleges that various Defendants took adverse actions against him in retaliation for these protected activities.  In order to be actionable, a defendant's conduct need not be egregious; petty harassment and ridicule, for example, may suffice.  Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982).  "[S]ince there is no justification for harassing people for exercising their constitutional rights [the chilling effect] need not be great in order to be actionable."  Id.  Yet, there are some injuries so de minimis that they do not rise to the level of constitutional violation.  "It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise."  Id.

As most of the adverse actions Evenstad alleges involved retaliatory conduct that caused him some injury or deprivation, they are actionable.  These include Coyour, Herberg, and Michels confiscating his papers and personal effects; Oulette refusing to provide medical treatment; Chukuske fabricating infractions to justify putting him in PI; and Johnston and Grimm putting him in PI for alleged infractions for which PI is not an authorized punishment.  The exception, however, is Johnson's statement, "We'll be ramping things up."  Verbal threats of retaliation may constitute "adverse actions," such as prison official threatening to "screw" an inmate (in more profane terms), Thaddeus-X v. Blatter, 175 F.3d 378, 398 (6th Cir. 1999), kill an inmate, Santiago v. Blair, 707 F.3d 984, 992 (8th Cir. 2013) ("In the circumstances before us, we conclude that a reasonable jury could find that threats of death, issued by a correctional officer tasked with guarding a prisoner's segregated cell, would chill a person of ordinary firmness."), or poison an inmate, Ford v. Palmer, No. 12-4212, 2013 WL 5340395, at *2 (2d Cir. Sept. 24, 2013).  But Johnson's alleged statement is too vague to be actionable.  Without a more specific reference to Evenstad or what he might have coming, without a history of abuse or a pattern of threats, and unaccompanied by any menacing gesture, Johnson's statement simply is not sufficiently threatening to chill a person of ordinary firmness from continuing a protected activity.

As to the third and final element—motivation—Evenstad has alleged that each of Defendants knew of at least one of his protected activities and their adverse actions were in retaliation for those activities.  Defendants challenge his allegations of retaliatory motive, contending he has not "demonstrate[d] a causal connection."  But he is not

required to "demonstrate" anything at this early stage and he may allege Defendants' motivation generally.  See Fed. R. Civ. P. 9(b) (knowledge and other "conditions of a person's mind" may be alleged generally).  Defendants' legal authority is inapposite, as each disposed of a retaliation claim *at summary judgment*.  E.g., Wilson v. Northcutt, 441 F.3d 586, 592–93 (8th Cir. 2006); Johnson v. Esry, No. 98-2573, 2000 WL 375269, at *1 (8th Cir. Apr. 13, 2000); Parks v. Dooley, Civ. No. 09-3514, 2011 WL 847011, at *26 (D. Minn. 2011) (Report & Recommendation of Mayeron, M.J.).

In conclusion, Evenstad has stated First Amendment retaliation claims against Coyour, Herberg, and Michels (Count VII), Chukuske (Count X), Oulette (Count X), and Johnston and Grimm (Count XIII), but not against Johnson (Counts I & II).

## II.   Conspiracy

Evenstad alleges that Coyour, Herberg, Michels, and Johnson conspired to retaliate against him for his complaint to Commissioner Ludeman.  To establish a claim for conspiracy under 42 U.S.C. § 1985, a plaintiff must demonstrate a conspiracy for the purpose of depriving another of the equal protection of the laws[4] and an act in furtherance of that conspiracy, causing injury to a person or property or the deprivation of a legal right.  Federer v. Gephardt, 363 F.3d 754, 757–58 (8th Cir. 2004).  "'The language requiring intent to deprive [another] of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'"  Id. at 758 n.3

---

[4] Section 1985 provides a remedy for conspiracies with other purposes, as well, but the Court does not list them as they are not relevant here.

(quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)) (alteration added).  As Evenstad does not allege invidious discrimination or any deprivation of the equal protection of the laws, or equal privileges and immunities, he fails to state a claim for conspiracy under § 1985 (Count XVII).

### III.   Unreasonable Search and Seizure

Evenstad asserts two claims for unreasonable search and seizure against Coyour, Herberg, and Michels, which they move to dismiss.

First, Evenstad alleges they unreasonably seized him when they removed him from his cell on December 27, 2006, during their search.  Involuntarily committed civil detainees have a Fourth Amendment right to be free from unreasonable searches and seizures similar to that of pretrial detainees.  Serna v. Goodno, 567 F.3d 944, 948 (8th Cir. 2009).  While a pretrial detainee retains "some Fourth Amendment rights upon commitment to a corrections facility," his reasonable expectation of privacy is "necessarily" of a "diminished scope" given the realities of institutional confinement.  Bell v. Wolfish, 441 U.S. 520, 557–58 (1979).  The Supreme Court held in Wolfish that room searches are an "appropriate security measure" in correctional facilities and that it is not unreasonable to require pretrial detainees to remain outside their rooms during such searches.  Id. at 557.  Given that the Eighth Circuit has applied the same constitutional standard for pretrial detainees to civilly committed individuals, the Court concludes that Wolfish sets the appropriate standard for Evenstad's claim.[5]  Like the pretrial detainees,

---

[5] Although Evenstad was on judicial hold at the MSOP and not civilly committed, the parties agree that the constitutional standard for civilly committed individuals applies to his claims.

he had a reduced expectation of privacy, and like any other correctional facility, the MSOP has an important interest in maintaining security and doing so efficiently. Defendants did not act unreasonably by requiring Evenstad to wait outside his room while they searched it and his claim (Count III) will therefore be dismissed.

Second, Evenstad asserts that Coyour, Herberg, and Michels used excessive force while conducting the "pat-down." These three Defendants assert they are entitled to qualified immunity from this claim because the alleged pat-down caused Evenstad only de minimis injury. A government actor is entitled to qualified immunity if his conduct did not violate "clearly established" law at the time.[6] Defendants argue that the infliction of de minimis injury did not violate clearly established law in 2006. At that time, it was clearly established that an arrestee had a right to be free from the use of excessive force but it was *not* clearly established that an officer violated an arrestee's rights by applying force that caused only de minimis injury. Chambers v. Pennycook, 641 F.3d 898, 908 (8th Cir. 2011). As late as 2011, it was still an "open question in this circuit whether an excessive force claim requires some minimum level of injury." Id. at 904 (quoting Copeland v. Locke, 613 F.3d 875, 881 (8th Cir. 2010)). Chambers resolved the issue, clarifying that even a de minimis injury can support an excessive-force claim. But in 2006, a reasonable police officer "could have believed that as long as he did not cause

---

[6] Defendants raise qualified immunity as a defense to all of Evenstad's claims, but as the laws relevant to his other surviving claims *were* clearly established in 2006 (e.g., the right to be free from retaliation for the exercise of First Amendment rights), the Court entertains this defense as to his excessive-force claim only.

more than *de minimis* injury to an arrestee, his actions would not run afoul of the Fourth Amendment." Id.

Although Chambers addresses the rights of arrestees, it stands to reason that Chambers applies equally to civilly committed individuals, as their excessive-force claims are subject to the same Fourth Amendment "objective reasonableness" standard as arrestees' claims. Beaulieu v. Ludeman, 690 F.3d 1017, 1033 (8th Cir. 2012) (applying Chambers to civilly committed individuals in the MSOP); Andrews v. Neer, 253 F.3d 1052, 1060–61 & n.7 (8th Cir. 2001) (excessive-force claim of involuntarily committed state hospital patient analyzed under the same "objective reasonableness" standard as a pretrial detainee or an arrestee). Thus, Defendants are entitled to qualified immunity if their alleged conduct inflicted only de minimis injury. That being said, it is not clear from the face of the pleadings whether Evenstad's injuries were de minimis because he pleads them only generally. See Whisman v. Rinehart, 119 F.3d 1303, 1309 (8th Cir. 1997) ("We have held that qualified immunity is an affirmative defense, which will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint.") (quotations omitted).[7] Accordingly, the Court may not determine Defendants' qualified immunity at this early juncture.

---

[7] Notably, the cases Defendants cite in support of their argument dispose of excessive-force claims on *summary judgment*, not on a Rule 12 motion. See, e.g., Johnson v. Hamilton, 452 F.3d 967, 972 (8th Cir. 2006); Rohrbough v. Hall, No. 4:07CV00996, 2008 WL 4722742 (E.D. Mo. Oct. 23, 2008); Garcia v. Hook, Civ. No. 04-5310, 2006 WL 1999161 (W.D. Ark. Jul. 17, 2006).

**IV.     Access to Counsel**

Evenstad alleges that Coyour, Herberg, and Michels violated his "right of access to counsel" under the Sixth and Fourteenth Amendments[8] when they confiscated his legal papers and effects from his room. (Am. Compl. ¶ 208.) The Sixth Amendment only provides a right to counsel in "criminal prosecutions." U.S. Const. Amend. VI. As Evenstad was not the subject of a criminal prosecution at the time, he fails to state a claim under the Sixth Amendment. His protections under the Fourteenth Amendment, however, may be broader. But even construing his claim as a denial of the right to access the courts, which includes within it a right to access legal papers, see Bounds v. Smith, 430 U.S. 817, 824–25 (1977), the claim is not actionable.

In order to have a cause of action based on the denial of access to legal papers, a plaintiff must show a "non-frivolous" legal claim was frustrated as a result. Lewis v. Casey, 518 U.S. 343, 351–53 (1996); see also Beaulieu, 690 F. 3d at 1037 ("Absent an articulation of how the alleged wrongful conduct [of opening the MSOP patients' legal mail] actually blocked the Patients' access to filing a complaint, or cause a filed complaint to be deficient, the Patients' alleged injuries are merely speculative.") (quotation omitted). Although Evenstad alludes to civil commitment proceedings pending against him, his does not allege that he was civilly committed, much less as a

---

[8] In his Memorandum, Evenstad asks the Court to consider this claim as a claim under the First Amendment as well (Pl.'s Mem. at 20 n.25); the Court declines to do so, as a party cannot amend his pleadings through memoranda, see, e.g., Morgan Distrib. Co. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir.1989) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss. To hold otherwise would mean that a party could unilaterally amend a complaint at will, even without filing an amendment, . . . simply by raising a point in a brief.") (internal citations omitted).

result of being denied access to his legal papers.  Accordingly, his claim (Count VI) will be dismissed.

**V.     Procedural Due Process**

Evenstad alleges Johnston and Grimm deprived him of his liberty by placing him in PI "without lawful authority or factual basis, in violation of existing Minnesota Rules and Minnesota Statutes, and in violation of [his] clearly established rights under the Fourteenth Amendment." (Am. Compl. ¶ 235.)  Interests protected by the Fourteenth Amendment stem from two sources:  the Amendment's Due Process clause itself or state law.  Here, though somewhat difficult to discern from his Amended Complaint or Memorandum, Evenstad appears to contend that Defendants violated a protected state-law interest.  (See Pl.'s Mem. at 25–26 (quoting the standard for state-created liberty interests).)

While state law may create a liberty interest protected by the Fourteenth Amendment, "it is clear that not every transgression of state law may do double duty as a constitutional violation."  Whisman, 199 F.3d at 1312.  "Only in very limited and obvious circumstances will federal constitutional significance attach in these matters."  Id.  In order to create a protected interest, the law must contain "explicitly mandatory language, *i.e.*, specific directives to the decisionmaker that if the [law's] substantive predicates are present, a particular outcome must follow."  Ky. Dept. of Corr. v. Thompson, 490 U.S. 454, 463 (1989) (quotation omitted).  As Evenstad has not articulated which statute or regulation he contends created a protected liberty interest, either in his Amended

Complaint or his Memorandum, the Court cannot conclude he has sufficiently alleged the violation of a protected interest and this claim (Count XII) will be dismissed.

Evenstad also alleges a procedural-due-process claim against Commissioners Jesson and Grimm for treating him as if he were a "patient" or "person in treatment" at the MSOP when he was there on judicial hold, in violation of Minnesota law. He seeks only declarative and injunctive relief through this claim and, as he no longer resides at the MSOP, Defendants move to dismiss the claim as moot. "[A]n inmate's claims for declaratory and injunctive relief to improve prison conditions [a]re moot when he . . . [is] no longer subject to those conditions" and is not likely to be subjected to them again. Smith v. Hundley, 190 F.3d 852, 855 (8th Cir. 1999); see also Senty-Haugen v. Goodno, 462 F.3d 876, 889 (8th Cir. 2006). Although Evenstad was not an inmate, the same principle applies. His claim for declaratory and injunctive relief regarding the treatment of persons on judicial hold at the MSOP is moot if he is no longer subject to the challenged treatment and is not likely to be subjected to it again. It is undisputed Evenstad is no longer at the MSOP—his Amended Complaint states he was released in 2008—and he does not allege he is likely to return. (Am. Compl. ¶ 185.) Thus, his claim for equitable relief (Count IX) is moot and will be dismissed.

**VI.   Minnesota Government Data Practices Act**

Evenstad asserts a claim under the MGDPA against "the Commissioner," who the Court interprets as the current Commissioner of the Department of Human Services, Defendant Jesson. (Am. Compl. ¶ 257.) The MGDPA regulates the state's creation, collection, storage, maintenance, and dissemination of data and the public's access to it,

including sensitive personal information. See Minn. Stat. §§ 13.01–13.99. Evenstad alleges Coyour, Herberg, and Michels "collected private data on [him], stored private data, and deprived [him] of access to these data . . . without lawful authority under the [MGDPA]" and that Jesson, as the Commissioner, was responsible for assuring their compliance and failed to do so. (Am. Compl. ¶¶ 253, 255.)

Claims under the MGDPA cannot be brought against individuals, Minn. Stat. § 13.08, subd. 1, so the Court construes Evenstad's claim as a claim against Jesson in her official capacity. But Jesson argues Evenstad cannot bring an MGDPA claim against her in her official capacity either. She asserts the State of Minnesota is immune from suit under the MGDPA in federal court and, as a suit against a state employee in her official capacity is treated as a suit against the State itself, Cooper v. St. Cloud State Univ., 226 F.3d 964, 968–69 (8th Cir. 2000), she shares the State's Eleventh Amendment immunity.

"[T]he Eleventh Amendment has been interpreted to extend to suits by all persons against a state in federal court. A state, however, may consent to suit in federal court." Santee Sioux Tribe of Neb. v. State of Neb., 121 F.3d 427, 430 (8th Cir. 1997) (quotation and citation omitted). "The test for whether a state has waived its immunity . . . is a stringent one. A state is deemed to have waived its immunity only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction." Id. (citation omitted). The waiver must be "clear and unequivocal." Id. at 431.

Evenstad argues Minnesota waived its immunity, citing the "Civil Remedies" section of the MGDPA, which states: "The state is deemed to have waived any immunity

to a cause of action brought under this chapter." Minn. Stat. § 13.08, subd. 1.  While this waiver of "any" immunity would logically seem to include Eleventh Amendment immunity, it is not quite so clear-cut.  In another chapter of the Minnesota Statutes, the State waives its Eleventh Amendment immunity by stating that a person "may bring a civil action against the state in federal court."  § 1.05, subd. 1; see also subds. 2–5 (stating the same).  In contrast to this explicit waiver, which contemplates suit "in federal court," the language of the MGDPA does not express a clear and unequivocal intent to waive Eleventh Amendment immunity specifically.  "A state's general waiver of sovereign immunity is insufficient to waive Eleventh Amendment immunity, because to waive Eleventh Amendment immunity, *the state must specify an intent to subject itself to federal court jurisdiction*."  Santee, 121 F.3d at 431 (emphasis added).  Because the State of Minnesota has not specified an intent to subject itself to suit *in federal court* under the MGDPA, Evenstad's claim (Count XVI) must be dismissed.  See also Shakopee Mdewakanton Sioux (Dakota) Comm'ty v. Hatch, Civ. No. 011737, 2002 WL 1364113, at *7–8 (D. Minn. June 20, 2002) (Montgomery, J.) (Eleventh Amendment precludes suit against Minnesota state official in federal court).

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. No. 29) is **GRANTED IN PART** and **DENIED IN PART** as follows:

(1) The Motion is **GRANTED** as to Counts I & II (against Johnson *only*) and Counts III, VI, IX, XII, XVI, and XVII of the Amended Complaint (Doc. No. 22);

(2)     Counts I & II (against Johnson), VI, IX, XII, and XVII are **DISMISSED WITHOUT PREJUDICE**; and

(3)     Counts III and XVI are **DISMISSED WITH PREJUDICE**.

(2)     The Motion is **DENIED** as to all other Counts.

This leaves Counts I and II (against Coyour, Herberg, and Michels), IV, V, VII, VIII, X (both), XIII, XIV, and XV pending.


Dated:  January 10, 2014

                                        s/Richard H. Kyle
                                        RICHARD H. KYLE
                                        United States District Judge